**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NEW ENGLAND TEAMSTERS PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>   v.<br><br>WEST PHARMACEUTICAL SERVICES, INC., ERIC M. GREEN, BERNARD J. BIRKETT, and QUINTIN J. LAI,<br><br>          Defendants. | Case No. 2:25-cv-02285-JS<br><br>Hon. Juan R. Sánchez<br>District Judge<br><br><u>CLASS ACTION</u><br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE UNOPPOSED
MOTION OF THE PENSION FUNDS FOR APPOINTMENT AS LEAD
PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL, AND IN
<u>OPPOSITION TO COMPETING MOTIONS</u>**

Presumptive Lead Plaintiff the Pension Funds[1] respectively submit this Memorandum of Law in further support of their motion for appointment as Lead Plaintiff and approval of selection of counsel (ECF No. 15), and in opposition to the competing motions. The Pension Funds' motion is unopposed.

## PRELIMINARY STATEMENT

On July 7, 2025, the Pension Funds moved for appointment as Lead Plaintiff and approval of their selection of Kessler Topaz and Labaton as Lead Counsel for the Class. *See* ECF No. 15. Two other movants, STA-ILA Pension, Benefits, and Severance & Annuity Trust Funds ("STA-ILA") and Louisiana School Employees' Retirement System ("LSERS"), also filed timely motions for appointment as Lead Plaintiff. *See* ECF Nos. 13-14. In recognition that the Pension Funds have the largest financial interest of any movant and are otherwise adequate to represent the Class, STA-ILA and LSERS have filed notices of non-opposition to the appointment of the Pension Funds. *See* ECF No. 16 at 2 ("[T]he lead plaintiff group comprised of [the Pension Funds], reported losses approximately $7.8 million and appears to otherwise satisfy the relevant requirements of Rule 23."); ECF No. 17.

The Pension Funds, as the movant claiming the largest financial interest while also satisfying the typicality and adequacy requirements of Rule 23, are the presumed "most adequate plaintiff" under the PSLRA. 15 U.S.C. § 78u–4(a)(3)(B)(iii). The Pension Funds—sophisticated, multi-billion-dollar institutions with prior service as lead plaintiffs under the PSLRA—sustained substantial losses of **$7,784,205** on a LIFO basis on their transactions in West common stock

---

[1] All definitions and abbreviations used herein remain unchanged from the Pension Funds' initial moving brief, unless otherwise indicated. *See* ECF No. 15-1. All citations and internal quotations are omitted, and all emphasis is added, unless noted.

during the Class Period.  The Pension Funds' loss is nearly **$7 *million*** larger than the losses of either of the competing movants:

| MOVANT[2] | LOSS[3] |
|---|---|
| Mississippi | ($3,448,404) |
| Mineworkers | ($2,584,761) |
| Akademiker | ($1,751,039) |
| | |
| **Combined Loss** | **($7,784,205)** |
| ~~STA-ILA~~ | ~~($822,219)~~ |
| ~~LSERS~~ | ~~($489,437)~~ |

Critically, Mississippi, Mineworkers, and Akademiker each individually suffered losses far exceeding STA-ILA or LSERS.  *See Aguilar v. Vitamin Shoppe, Inc.*, No. 17-cv-6454, 2018 WL 1960444, at *11 (D.N.J. Apr. 25, 2018) (appointing group that included "shareholder with the largest financial loss"); *In re Cendant Corp. Litig.*, 264 F.3d 201, 270 (3d Cir. 2001) (affirming district court's appointment of group of institutional investors with largest losses).

The Pension Funds also satisfy the typicality and adequacy requirements of Rule 23 and are perfectly situated to represent all class members.  As indicated in the Pension Funds' opening motion papers, the Pension Funds are a small, cohesive, and like-minded collaboration of sophisticated institutional investors with significant experience overseeing counsel and acting as fiduciaries, that are willing and able to supervise this litigation.  *See* ECF No. 15-5 ¶¶ 3-5, 8, 16. Prior to filing their motion in this case, representatives of the Pension Funds held a conference call to discuss their leadership of this action, including their plan to ensure that the matter will be litigated in the best interest of all class members, their shared interests in prosecuting the case in a

---

[2] Loss figures are taken from the loss charts accompanying the movants' initial motions.  ECF Nos. 13-5, 14-4, 15-4.

[3] Movants STA-ILA and LSERS are shown in struck-through text because they have filed notices of non-opposition to the appointment of the Pension Funds.  *See* ECF Nos. 16, 17.

2

collaborative manner, and the procedures and protocols to be followed in jointly prosecuting the case. *See id.* ¶ 11; *Himes v. Five Below, Inc.*, No. 24-3638, 2024 WL 4596235, at *4 (E.D. Pa. Oct. 28, 2024) ("In their sworn Joint Declaration, the two members of the [institutional investors group] describe their prior experience with PSLRA class actions and articulate their ongoing coordination with each other and in the oversight of counsel. . . . [T]he appointment of the two . . . funds as a group in no way erodes their ability to fulfill the task of lead plaintiff."). There is no argument challenging the Pension Funds' *bona fides* to faithfully and effectively prosecute this case as Lead Plaintiff on behalf of the class. *See Mersho v. U.S. Dist. Ct. for D. of Ariz.*, 6 F.4th 891, 902 (9th Cir. 2021) ("The [PSLRA] requires proof that the presumptive lead plaintiff is not adequate.").

As the presumptive "most adequate plaintiff," the PSLRA and Third Circuit authority require the Pension Funds be appointed as Lead Plaintiff absent "***proof***" that they are atypical, inadequate, or subject to unique defenses. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II); *Cendant*, 264 F.3d at 263 (noting that once the presumption is triggered, it "may be rebutted ***only upon proof*** by a member of the purported plaintiff class that the presumptively most adequate plaintiff" will not fairly represent the interests of the class) (emphasis added). As no movant has met, or will be able to meet, the requisite standard of proof to rebut the statutory presumption in favor of the Pension Funds, they are entitled to appointment as Lead Plaintiff. Accordingly, the Pension Funds, as the presumptive "most adequate plaintiff," respectfully request that the Court appoint them as Lead Plaintiff and approve their selection of Kessler Topaz and Labaton as Lead Counsel for the class.

## ARGUMENT

### I.    THE PENSION FUNDS SHOULD BE APPOINTED AS LEAD PLAINTIFF

The PSLRA requires a sequential process for appointing a lead plaintiff.  *See Cendant*, 264 F.3d at 262 (summarizing the PSLRA's process for selecting a lead plaintiff); *see also* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I) (stating that the presumptive lead plaintiff is the movant: (1) with the "largest financial interest in the relief sought by the class"; and (2) who "otherwise satisfies the requirements of Rule 23").  In *Cendant*, the Third Circuit explained that "the court's first duty is to identify the movant that is presumptively entitled" to lead plaintiff status by identifying the movant with "'the largest financial interest in the relief sought by the class.'"  *Cendant*, 264 F.3d at 262.  "Once the court has identified the movant with 'the largest financial interest in the relief sought by the class,' it should then turn to the question whether that movant 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure,' and is thus the presumptively most adequate plaintiff."  *Id*.

The Pension Funds respectfully submit that they are the "most adequate plaintiff" because they have complied with the PSLRA's procedural requirements, possess the largest financial interest of any qualified movant, and otherwise satisfy Rule 23's typicality and adequacy requirements.  *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status[.]").

### A.    The Pension Funds Have the Largest Financial Interest in the Relief Sought by the Class

The Pension Funds, having suffered ***$7,784,205*** in losses on a LIFO basis as a result of their Class Period purchases of West common stock, undisputedly possess the largest financial interest of any movant, both individually and as a group.  To evaluate which movant has "the

largest financial interest in the relief sought by the class," courts within this Circuit generally consider: "'(1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs.'" *Allegheny Cnty. Emp. Ret. Sys. v. Energy Transfer LP*, No. 20-200, 2020 WL 815136, at *2-3 (E.D. Pa. Feb. 19, 2020).

Of these factors, a movant's loss is the most important factor in determining whether the movant has the largest financial interest in the litigation. *See id.* (identifying the third *Cendant* factor—the amount of losses suffered by the prospective lead plaintiff—as the most critical); *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004) ("[T]he amount of financial loss is the most significant of these elements.").

Here, the Pension Funds possess a LIFO loss more than ***eight times*** larger than STA-ILA and nearly ***fifteen times*** larger than LSERS. Critically, Mississippi, Mineworkers, and Akademiker each individually have a larger financial interest than any competing movant. *See, e.g.*, *Forden v. Allergan PLC*, No. 16-9449, 2017 WL 452005, at *3 (D.N.J. Feb. 1, 2017) (appointing group of two institutional investors asserting the largest losses); *Vitamin Shoppe*, 2018 WL 1960444, at *11 (appointing group that included "shareholder with the largest financial loss"); *Cendant*, 264 F.3d at 270 (affirming district court's appointment of group of institutional investors with largest losses).

In addition to asserting significantly greater losses, the Pension Funds also purchased more shares of West stock (on a total and net basis) than any other movant and expended greater net funds on those purchases than any other movant. Indeed, each individual member of the Pension Funds alone purchased more shares of West stock (on a total and net basis) and expended greater net funds on those purchases than any other competing movant:

5

| Movant | Total Shares Purchased | Net Shares Purchased | Net Expenditures |
|---|---|---|---|
| Mississippi | 30,671 | 24,513 | ($8,258,729) |
| Mineworkers | 15,307 | 15,307 | ($5,915,943) |
| Akademiker | 13,417 | 13,417 | ($4,619,874) |
| **Pension Funds** | **59,395** | **53,237** | **($18,794,546)** |
| ~~STA-ILA~~ | ~~10,917~~ | ~~10,251~~ | ~~($3,064,796)~~ |
| ~~LSERS~~ | ~~4,700~~ | ~~4,700~~ | ~~($1,511,195)~~ |

As such, there can be no credible dispute that the Pension Funds have "the largest financial interest in the relief sought by the class" and are entitled to be appointed Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

**B.     The Pension Funds Satisfy the Requirements of Rule 23**

In addition to having the largest financial interest, the Pension Funds also satisfy the PSLRA's preliminary showing of typicality and adequacy. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *Cendant*, 264 F.3d at 263 (at the lead plaintiff appointment stage, the Rule 23 inquiry "should be confined to determining whether the movant has made a prima facie showing of typicality and adequacy."). To overcome the strong presumption entitling the Pension Funds to appointment as Lead Plaintiff, the PSLRA requires "proof" that the presumptive lead plaintiff is atypical or inadequate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Here, no movant challenges the Pension Funds' ability to satisfy both requirements.

**1.     The Pension Funds Are Typical**

The Pension Funds are typical to the class as a whole and not subject to any potentially disqualifying unique defenses. The typicality requirement demands that the court "consider whether the circumstances of the movant with the largest losses are markedly different or the legal theory upon which the claims of that movant 'are based differ from that upon which the claims of other class members will perforce be based.'" *Cendant*, 264 F.3d at 265.

6

As demonstrated in their opening brief, the Pension Funds are typical class members. *See* ECF No. 15-1 at 8-9. The Pension Funds suffered losses on their investments in West common stock as a result of their reliance on Defendants' alleged misstatements and/or omissions. Therefore, the Pension Funds' claims are based on the same course of events as the claims of the class and will rely upon the same legal theories as the class as a whole. Thus, the Pension Funds satisfy the typicality requirement.

### 2.    The Pension Funds Are Adequate

The Pension Funds also satisfy Rule 23's adequacy requirement because they are capable of "fairly and adequately protect[ing] the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). The Third Circuit has consistently held that representation is adequate when the lead plaintiff "has the ability and incentive to represent the claims of the class vigorously" and has "obtained adequate counsel," and its interests are sufficiently aligned with those of absent class members. *Cendant*, 264 F.3d at 265. Furthermore, "once the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair[] and adequate[]' job." *Id*. at 268 (emphasis in original).

The Pension Funds satisfy Rule 23's adequacy requirement because they are capable of "fairly and adequately protect[ing] the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). The Pension Funds are sophisticated institutional investors collectively responsible for managing billions in assets and have significant experience acting as fiduciaries and overseeing outside counsel in complex litigation. *See* ECF No. 15-5 ¶¶ 2-5, 8, 16. The Pension Funds each have dedicated staffs of professionals, who will ensure effective oversight of counsel

and this litigation, *see id.* ¶ 12, and the Pension Funds have significant experience serving as PSLRA-appointed lead plaintiffs alongside other institutions. *Id.* ¶ 8. Additionally, the Pension Funds have already taken significant steps to protect the class. For example, prior to moving for Lead Plaintiff appointment, the Pension Funds convened a joint conference call to discuss matters such as "procedures and mechanisms for communication and decision-making that will ensure that the proposed class will benefit from our supervision of counsel." *Id.* ¶ 11.

Indeed, the Pension Funds are precisely the type of sophisticated institutional investors that Congress intended to lead securities class actions. Each institution fully understands its obligations to the class under the PSLRA and is willing and able to undertake the responsibilities of the Lead Plaintiff to ensure the vigorous prosecution of this action. *See id.* ¶¶ 2-5, 16; *Five Below*, 2024 WL 4596235 at *4 ("In their sworn Joint Declaration, the two members of the [institutional investors group] describe their prior experience with PSLRA class actions and articulate their ongoing coordination with each other and in the oversight of counsel. . . . [T]he appointment of the two . . . funds as a group in no way erodes their ability to fulfill the task of lead plaintiff.").

Courts throughout the country, including those in the Third Circuit, routinely recognize the propriety of appointing institutional investor groups, particularly where the group has shown that it is cohesive and capable of overseeing counsel and the litigation. *See Cendant*, 264 F.3d at 266; *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. 13-6731, 2014 WL 1395059, at *9 (E.D. Pa. Apr. 10, 2014) ("Unquestionably, a group of investors can serve as lead plaintiff."). Before deciding to collectively move for Lead Plaintiff appointment, the Pension Funds each independently reviewed their counsel's investigation of the allegations in the Action. ECF No. 15-5 ¶ 8. Further, as noted above, prior to making their motion for Lead Plaintiff appointment, the Pension Funds participated in a joint call discussing how they would coordinate managing the

Action as Lead Plaintiff. *See id.* ¶ 11; *Energy Transfer LP*, 2020 WL 815136, at *7 (finding that group of five institutional investors "easily makes a prima facie showing of adequacy" where the group submitted a sworn joint declaration "articulating their ongoing coordination with and oversight of counsel"). In addition, the Pension Funds directed their proposed Lead Counsel to enter into a Joint Prosecution Agreement, which can be provided to the Court *in camera*, outlining Lead Counsel's respective responsibilities and ensuring there will be no duplication of effort and that the claims of the class are prosecuted vigorously yet efficiently and in a cost-effective manner. ECF No. 15-5 ¶ 15. The Pension Funds have also established procedures for resolving any disagreements or disputes that may arise. *See id.* ¶ 14. Through these measures and others, the Pension Funds have sought to ensure the class will receive the best possible representation. *See also City of Hollywood Firefighters' Pension Fund v. ASML Holding N.V.*, No. 24 CIV. 8664 (NRB), 2025 WL 743986, at *4 (S.D.N.Y. Mar. 6, 2025) (appointing group that submitted a declaration and instructed counsel to execute a joint prosecution agreement).

Additionally, given their significant losses, the Pension Funds are strongly motivated to vigorously act as an advocate and fiduciary on behalf of the class and are well equipped to oversee counsel in this regard. The Pension Funds have demonstrated their adequacy through the selection of Kessler Topaz and Labaton, firms with decades of experience successfully litigating securities class actions, as their proposed Lead Counsel for the Class. *See* ECF Nos. 15-7 & 15-8. Further demonstrating their leadership and commitment to advancing the litigation, counsel for the Pension Funds filed the complaint against Defendants. *See id.* ¶ 7. Moreover, there is no conflict of interest between the Pension Funds' interests and those of the other class members. To the contrary, the interests of the Pension Funds and other class members are directly aligned because all suffered

damages from their purchases of West common stock at prices artificially inflated by Defendants' misconduct.

Accordingly, because the Pension Funds have the largest financial interest in the relief sought by the class and otherwise satisfy the relevant requirements of Rule 23, the Pension Funds "have met their burden on their motion for appointment as lead plaintiffs." *Forden*, 2017 WL 452005, at *3 (appointing group of institutional investors).

### C.    The Pension Funds' Choice of Counsel Should be Approved

The Pension Funds have selected the law firms of Kessler Topaz and Labaton as the proposed Lead Counsel for the class. "While the appointment of counsel is made subject to the approval of the court, the [PSLRA] clearly leaves the choice of class counsel in the hands of the lead plaintiff." *Cavanaugh*, 306 F.3d at 734. "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009). As discussed in the Pension Fund's opening memorandum, Kessler Topaz and Labaton are nationally recognized securities class action firms that have successfully worked together as co-lead counsel in a number of securities class actions, and thus highly qualified to litigate this case under their direct oversight and direction. *See* ECF No. 15-1 at 13-15. *See also Shannahan v. FTAI Aviation LTD.*, No. 25-cv-0541, ECF No. 55 (S.D.N.Y. July 17, 2025) (appointing Kessler Topaz and Labaton as co-lead counsel and stating that "[e]ach firm has substantial experience in the prosecution of securities fraud class actions" and "[b]oth firms are qualified to prosecute this securities action").

## II.    THE COMPETING MOTIONS SHOULD BE DENIED

As the Pension Funds are the unrebutted and unopposed presumptive "most adequate plaintiff" in this case, the plain language of the PSLRA mandates the Pension Funds' appointment

as Lead Plaintiff and the denial of the competing motions. *See* 15 U.S.C. § 78u-4(a)(3)(B).

Therefore, the competing Lead Plaintiff motions should be denied.

## CONCLUSION

For the foregoing reasons, the Pension Funds respectfully request the Court grant their unopposed motion and enter an Order: (1) appointing the Pension Funds as Lead Plaintiff; (2) approving the Pension Funds' selection of Kessler Topaz and Labaton as Lead Counsel for the class; and (3) granting such other relief as the Court may deem just and proper.

DATED: July 21, 2025

Respectfully submitted,

*s/ Naumon A. Amjed*
Naumon A. Amjed (PA #309520)
**KESSLER TOPAZ MELTZER
  & CHECK, LLP**
Darren J. Check (PA #86279)
Ryan T. Degnan (PA #309305)
Karissa J. Sauder (PA #319196)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com
ksauder@ktmc.com

**LABATON KELLER SUCHAROW LLP**
Francis P. McConville
Connor C. Boehme
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
fmcconville@labaton.com
cboehme@labaton.com

*Counsel for the Pension Funds and Proposed Lead Counsel for the Class*

11

**CERTIFICATE OF COMPLIANCE**

I, Naumon A. Amjed, hereby certify that on July 21, 2025, I caused a true and correct copy of the foregoing Memorandum of Law in Further Support of the Unopposed Motion of the Pension Funds for Appointment as Lead Plaintiff and Approval of Selection of Counsel, and in Opposition to Competing Motions to be filed electronically with the Clerk of the Court using the ECF system, and it is available for viewing and downloading from the ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

> *s/ Naumon A. Amjed*
> Naumon A. Amjed (PA #309520)
> **KESSLER TOPAZ MELTZER**
> **& CHECK, LLP**
> 280 King of Prussia Road
> Radnor, PA 19087
> Telephone: (610) 667-7706
> Facsimile: (610) 667-7056
> namjed@ktmc.com
>
> *Counsel for the Pension Funds and Proposed Lead Counsel for the Class*

12